```
                UNITED STATES DISTRICT COURT
                 MIDDLE DISTRICT OF FLORIDA
                       TAMPA DIVISION
```

LESLIE CUCINOTTA,

              Plaintiff,

v.                              Case No. 8:12-cv-1194-T-33AEP

CVS PHARMACY, INC. and
HOLIDAY CVS, LLC,

              Defendants.
_____/

## ORDER

This matter comes before the Court pursuant to Defendants CVS Pharmacy, Inc. and Holiday CVS, LLC's Motion to Dismiss Amended Complaint for Failure to State a Claim (Doc. # 4), which was filed on June 1, 2012. Plaintiff Cucinotta filed a Response to Defendants' Motion to Dismiss (Doc. # 5) on June 11, 2012. For the reasons stated below, Defendants' Motion to Dismiss is granted without prejudice with leave to file an amended complaint by September 24, 2012.

## I. Background

In April of 2009, Cucinotta commenced employment with CVS as a pharmacy technician. (Doc. # 2 ¶ 4). On or about November 5, 2009, CVS permitted Cucinotta to leave work early to visit her mother in a hospital several hours away. (Id. at ¶ 5). On or about November 11, 2009, Cucinotta requested "family medical leave to attend to her mother up to December

23, 2009, which was subsequently granted by CVS pursuant to the CVS policy handbook." Id.

While at work on or about November 13, 2009, Cucinotta "was notified that her mother was gravely ill and that the end of her life was near," and CVS accordingly permitted Cucinotta "to leave after completing her shift . . . to attend to her mother." (Id. at ¶ 6). The four-hour delay caused by Cucinotta's manager requiring Cucinotta to complete her shift before departing "resulted in [Cucinotta] arriving at the hospital only to discover that her mother had just passed away." (Id. at ¶ 7). With CVS's permission, Cucinotta "remain[ed] off work to tend to her mother's affairs . . . [until] December 23, 2009, all as unpaid leave." (Id. at ¶ 8).

Cucinotta received from CVS a letter dated November 18, 2009, "confirming the agreed to Family Leave of Absence from November 11, 2009, to December 23, 2009, and explaining CVS's policy for taking leave." (Id. at ¶ 9). However, "prior to December 15, 2009," when Cucinotta attempted to return to work, Cucinotta was informed that "she was terminated effective the date of her mother's death, November 13, 2009." (Id. at ¶ 10). Cucinotta requested reinstatement of employment, but was denied. (Id. at ¶ 11). Consequently,

2

Cucinotta now sues CVS for (1) breach of contract and (2) intentional infliction of emotional distress.

## II. Legal Standard

To warrant dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, it must be "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Blackston v. State of Ala., 30 F.3d 117, 120 (11th Cir. 1994)(quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)). In reviewing a motion to dismiss, the Court accepts as true all factual allegations in the complaint and construes the facts in the light most favorable to the plaintiff. See Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004).

In Bell Atlantic Corp. v. Twombly, the Supreme Court articulated the standard by which claims should be evaluated on a motion to dismiss:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

550 U.S. 544, 555 (2007) (internal citations omitted).

3

Furthermore, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

In decisions applying Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Eleventh Circuit has "adopted the 'incorporation by reference' doctrine, under which a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed." Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002) (internal citations omitted). Horsley explained that "'[u]ndisputed' in this context means that the authenticity of the document is not challenged." Id.

### III. Analysis

#### A. Count I

Under Florida law, which the Court applies in this diversity case, a plaintiff must assert the existence of the following three elements to state a claim for breach of contract: (1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach. Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co., 527 F. Supp. 2d 1355, 1365 (M.D. Fla. 2007).

In this case, Cucinotta fails to assert that a valid and

4

enforceable contract with CVS exists. Instead, Cucinotta apparently requests the Court to infer that a valid contract exists from the following provision: "With permission from CVS, through her store manager, [Cucinotta] was permitted to remain off work to tend to her mother's affairs, including funeral arrangements to December 23, 2009, all as unpaid leave, pursuant to the policy of CVS." (Doc. # 2 ¶ 8). Cucinotta subsequently explains that she received a letter from CVS "confirming the agreed to Family Leave of Absence," but Cucinotta fails to attach to the Complaint either the source of the "policy of CVS" or the letter received from CVS. (Id. at ¶ 9). However, because both the CVS employee handbook and the letter Cucinotta received from CVS are central to Cucinotta's claim and because their authenticity is undisputed, the incorporation by reference doctrine explained in Horsley enables the Court to consult the documents attached as Exhibits A and B to CVS's Motion to Dismiss. (Docs. # 4-1, 4-2).

The CVS employee handbook does not independently constitute a contract between Cucinotta and CVS. The handbook itself, on a page requiring the employee's signature, directs the employee to verify: "I understand that neither this handbook nor any other communication by a management

5

representative, whether oral or written, is intended to in any way create a contract of employment." (Doc. # 4-1 at 28). The handbook additionally provides that "[n]o statement or representation by a supervisor or other manager, whether oral or written, can supplement or modify this handbook." Id. Further, CVS indicates within the handbook that "the company has the right, with or without notice . . . to change any of its guidelines, policies, practices, working conditions or benefits at any time." (Id. at 3). These unambiguous provisions clearly aim to prevent employees from relying on any part of the employee handbook as a binding guide to the employment policies of CVS.

Even if Cucinotta sought to apply only the "Leave of Absence" section of the handbook to the present case, the language guarantees no specific procedure for leave. This section provides:

> The company is committed to compliance with all applicable federal, state and local laws entitling employees to take leaves of absence, such as the FMLA, as described below. Additionally, the company may offer other leave of absence options, which are more generous than federal, state, and local laws, depending on business operations, the employee's position and place of employment.

Given the CVS handbook's lack of any specific provisions regarding the terms of employee leave, the Court finds no

6

basis for an enforceable agreement between Cucinotta and CVS based on the employee handbook.

Cucinotta also argues that her alleged agreement with CVS was memorialized in a letter sent to Cucinotta by CVS. However, this letter provides terms that are no more certain than the employee handbook. Specifically, the letter states:

> If the enclosed Notice of Eligibility shows that you are eligible for FMLA leave, CVS Caremark is provisionally designating your absence as covered by the Family and Medical Leave Act (FMLA) and any state leave law that runs concurrently with FMLA leave. If you are not eligible for FMLA leave, you may be eligible under company policy.

(Doc. # 4-2 at 2). This conditional language cannot be considered the basis for an enforceable contract between CVS and Cucinotta. The letter further directs Cucinotta to complete one of the enclosed certification forms and return the completed form to CVS no later than 15 days from the date of receipt of the letter, and informs Cucinotta that "CVS Caremark will issue a final leave determination within five business days after receipt of the completed form(s)". Id. at 2, 3.

As the foregoing discussion reveals, neither the CVS employee handbook nor the letter Cucinotta received from CVS indicates the formation of an enforceable agreement between Cucinotta and CVS. In order to provide Cucinotta with an

7

opportunity to allege additional facts that may support a cause of action for breach of contract, the Court grants without prejudice Defendants' Motion to Dismiss as to Count I.

**B. Count II**

To state a claim for intentional infliction of emotional distress under Florida law, a complaint must allege the following four elements: "(1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct; (3) the conduct caused the emotional distress; and (4) the distress was severe." Liberty Mut. Ins. Co. v. Steadman, 968 So. 2d 592, 594 (Fla. 2nd DCA 2007). In determining whether certain conduct might support a claim of intentional infliction of emotional distress, the Court must objectively consider "whether such behavior is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Metro. Life Ins. Co. v. McCarson, 467 So. 2d 277, 278-79 (Fla. 1985). This determination "falls to the judiciary——it is a matter of law, not a question of fact." Ponton v. Scarfone, 468 So. 2d 1009, 1011 (Fla. 2nd DCA 1985).

In distinguishing outrageous from non-actionable behavior, Florida courts have found plaintiffs' allegations

8

sufficient to support a claim of intentional infliction of emotional distress in cases where defendants (1) produced and distributed a publication in which the author threatened "to kill the plaintiff[ ] and to rape the plaintiff's children," Nims v. Harrison, 768 So. 2d 1198, 1201 (Fla. 1st DCA 2000); (2) repeatedly subjected the plaintiff to sexual harassment and verbal abuse coupled with unwelcome physical contact or abuse, Stockett v. Tolin, 791 F. Supp. 1536 (S.D. Fla. 1992); Johnson v. Thigpen, 788 So. 2d 410 (Fla. 1st DCA 2001); (3) misrepresented to a widow that a container held her deceased husband's ashes when in fact the container held the ashes of another deceased person, Smith v. Telophase Nat'l Cremation Soc'y, Inc., 471 So. 2d 163 (Fla. 2nd DCA 1985); or (4) misrepresented the cause of death of a deceased patient to cover up an accidental lethal overdose that ultimately led to the patient's death, Thomas v. Hosp. Bd. of Dirs. of Lee County, 41 So. 3d 246 (Fla. 2nd DCA 2010).

Florida courts have found outrageousness lacking, however, in cases where the defendant (1) directed plaintiff-employee to report to work immediately, despite defendant's awareness that plaintiff-employee might be suffering symptoms of her epileptic seizure disorder, resulting in plaintiff suffering a seizure while driving to work, Hernandez v.

9

Tallahassee Med. Ctr., 896 So. 2d 839 (Fla. 1st DCA 2005); (2) verbally abused the plaintiff in the workplace with humiliating language and racial epithets, Lay v. Roux Labs., Inc., 379 So. 2d 451 (Fla. 1st DCA 1980); or (3) cremated a deceased person's body without the deceased person's daughter's notification or consent, but with the consent of the deceased's companion, Matsumoto v. Am. Burial & Cremation Svcs., Inc., 949 So. 2d 1054 (Fla. 2nd DCA 2006).

In the present case, the allegations in the Complaint do not state a claim for intentional infliction of emotional distress. Under the circumstances of this case, Cucinotta's ability to state a claim for intentional infliction of emotional distress turns on the awareness of the CVS manager regarding the urgent nature of Cucinotta's request. Because Cucinotta merely states in the Complaint that she requested "immediate leave from her position to tend to her mother," Cucinotta has failed to allege that the CVS manager knew that Cucinotta's mother's death was imminent when the manager denied the request for immediate leave. (Doc. # 2 at 2). Without knowledge that denying Cucinotta's request could potentially result in Cucinotta's inability to be present during her mother's final moments, the CVS manager's decision to require Cucinotta to complete her shift does not constitute

10

outrageous conduct. See Langer v. George Washington Univ., 498 F. Supp. 2d 196, 200 (D.D.C. 2007) ("[T]he extreme and outrageous nature of conduct underlying an intentional infliction of emotional distress claim may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress . . . . Conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge, where it would not be so if he did not know.") (internal citations omitted).

Cucinotta also alleges that CVS's behavior was "beyond all bounds of decency" at the time Cucinotta returned to work, "prior to December 15, 2009," when CVS informed Cucinotta that she had been terminated as of November 13, 2009. Again, however, this conduct falls short of the outrageousness required to state a claim for intentional infliction of emotional distress. Cucinotta does not allege facts depicting the process of this termination to be unusually harsh or inappropriate; Cucinotta's status as a "self-supporting single female [who] was totally dependent on her job at CVS for her livelihood" does not impose an exceptional duty upon the employer effectuating Cucinotta's termination. (Doc. # 2 ¶ 17).

Additionally, since the Court finds no indication in the

11

Complaint that the parties indeed reached an agreement regarding Cucinotta's leave of absence, Cucinotta's allegation that CVS "intentionally, deliberately, and/or recklessly inflicted emotional and mental suffering on [Cucinotta] by not having any intention to honor [the] agreement" lacks merit. Id. Neither the circumstances surrounding Cucinotta's obligation to complete her shift at work on November 13, 2009, nor CVS's subsequent termination of Cucinotta's employment constitutes the type of extreme behavior required to state a claim for intentional infliction of emotional distress. Accordingly, the Court grants without prejudice Defendants' Motion to Dismiss as to Count II.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

Defendants' Motion to Dismiss Amended Complaint for Failure to State a Claim (Doc. # 4) is **GRANTED** without prejudice. Plaintiff shall file an amended complaint on or before September 24, 2012.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 12th day of September, 2012.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

12

Copies:

All Counsel and Parties of Record