```
                  UNITED STATES DISTRICT COURT
                   MIDDLE DISTRICT OF FLORIDA
                         TAMPA DIVISION

LESLIE CUCINOTTA,

                Plaintiff,
v.                                 Case No.  8:12-cv-1194-T-33AEP


CVS PHARMACY, INC. and
HOLIDAY CVS, LLC,

                Defendants.
_____/
```

### ORDER

This matter comes before the Court pursuant to Defendants CVS Pharmacy, Inc. and Holiday CVS, LLC's Motion to Dismiss Second Amended Complaint for Failure to State a Claim (Doc. # 19), which was filed on October 9, 2012. Plaintiff Leslie Cucinotta filed a Response to Defendants' Motion to Dismiss (Doc. # 20) on October 18, 2012. For the reasons stated below, Defendants' Motion to Dismiss is granted in part and denied in part.

### I. Background

In April of 2009, Cucinotta commenced employment with CVS as a pharmacy technician. (Doc. # 18 ¶ 4). On or about November 5, 2009, CVS permitted Cucinotta to leave work early to visit her mother in a hospital several hours away. Id. at ¶ 5. On or about November 11, 2009, Cucinotta requested "family medical leave up to December 23, 2009[,] to tend to

her mother, whose condition was rapidly deteriorating." Id.

While at work on or about November 13, 2009, Cucinotta "was notified that her mother was gravely ill and her death was imminent," and CVS accordingly permitted Cucinotta "to leave, but only after she worked an additional four hours, the store manager knowing from the previous request that it took Cucinotta three hours to drive to the hospital where her mother was hospitalized." Id. at ¶ 6. The four-hour delay caused by Cucinotta's manager requiring Cucinotta to complete her shift before departing "resulted in [Cucinotta] arriving at the hospital only to discover that her mother had just passed away." Id. at ¶ 7. CVS thereafter "permitted [Cucinotta] to remain off work to tend to her mother's affairs . . . [until] December 23, 2009." Id. at ¶ 8.

Despite this permission, however, "prior to December 15, 2009," when Cucinotta attempted to return to work, Cucinotta was informed that "she was terminated effective the date of her mother's death, November 13, 2009." Id. at ¶ 9. Cucinotta requested reinstatement of employment, but was denied. Id. at ¶ 10.

Consequently, Cucinotta now sues CVS for (1) breach of contract and (2) intentional infliction of emotional distress. The Court previously granted without prejudice CVS's motion to

2

dismiss with regard to the same two causes of action and, in order to provide Cucinotta with an opportunity to allege additional facts to support her claims, the Court granted Cucinotta leave to file an amended complaint. (Doc. # 16). CVS now seeks dismissal of Cucinotta's amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**II. Legal Standard**

In reviewing a motion to dismiss, a trial court accepts as true all factual allegations in the complaint and construes the facts in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). However, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

In Bell Atlantic Corp. v. Twombly, the Supreme Court articulated the standard by which claims should be evaluated on a motion to dismiss:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

550 U.S. 544, 555 (2007) (internal citations omitted).

In accordance with Twombly, Federal Rule of Civil Procedure 8(a) calls "for sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Twombly, 550 U.S. at 570). A plausible claim for relief must include "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In decisions applying Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Eleventh Circuit has "adopted the 'incorporation by reference' doctrine, under which a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed." Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002) (internal citations omitted). Horsley explained that "'[u]ndisputed' in this context means that the authenticity of the document is not challenged." Id.

**III. Analysis**

   **A. Count I**

The Court begins by noting that both Counts in Cucinotta's complaint are merely labeled "Count I" and "Count

4

II," without a specific statement of the cause of action that each Count seeks to establish. Although the Court agrees with CVS's interpretation that Count I constitutes a breach of contract claim and Count II constitutes a claim for intentional infliction of emotional distress, Cucinotta's response to the motion additionally contains arguments based on the equitable theory of promissory estoppel.

"[C]laims [for breach of contract and promissory estoppel] are alternatives for each other. The doctrine of promissory estoppel comes into play where the requisites of contract are not met, yet the promise should be enforced to avoid injustice." Doe v. Univision Television Grp., Inc., 717 So. 2d 63, 65 (Fla. 3d DCA 1998). Rather than asserting these causes of action in the alternative, Cucinotta has intertwined both theories in a single Count. However, because the Court finds that Cucinotta's complaint fails to state a claim for either breach of contract or promissory estoppel, the ambiguity is inconsequential for purposes of ruling on the motion to dismiss.

Under Florida law, which the Court applies in this diversity case, a plaintiff must assert the existence of the following three elements to state a claim for breach of contract: (1) the existence of a contract, (2) a breach of the

contract, and (3) damages resulting from the breach. Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co., 527 F. Supp. 2d 1355, 1365 (M.D. Fla. 2007). In this case, the claim for breach of contract fails on the first element. To establish the existence of a contract, Cucinotta must demonstrate that the manager's statement of permission had the requisite elements of a contract: an offer, an acceptance, and consideration. See Med-Star Cent., Inc. v. Psychiatric Hosps. of Hernando Cnty., Inc., 639 So. 2d 636, 637 (Fla. 5th DCA 1994).

As CVS correctly indicates in the motion to dismiss, Cucinotta does not identify any specific consideration to support the manager's alleged promise regarding Cucinotta's requested leave. (Doc. # 19 at 9).

> The consideration required to support a simple contract need not be money or anything having monetary value, but may consist of either a benefit to the promisor or a detriment to the promisee . . . . . Indeed, there is a consideration if the promisee, in return for the promise, does anything legal which he is not bound to do, or refrains from doing anything which he has a right to do, whether there is any actual loss or detriment to him or actual benefit to the promisor or not.

Dorman v. Publix-Saenger-Sparks Theatres, 135 Fla. 284, 290-91 (Fla. 1938). An employer's promise to permit an employee to leave work for a period during which the employee was already

6

obligated to work does not benefit the employer-promisor; rather, the promise would merely enable the employee-promisee to receive a gift or favor. Such a promise cannot properly constitute consideration. Without consideration, Cucinotta cannot establish the existence of a contract, and her claim for breach of contract accordingly fails.

In response to the motion to dismiss, Cucinotta does not dispute that the alleged contract lacked sufficient consideration. Instead, Cucinotta argues that her detrimental reliance on the manager's promise that she would be granted a family medical leave of absence supports a claim of promissory estoppel, and that such reliance supersedes the requirement that the oral "contract" be supported by adequate consideration. (Doc. # 20 at 2).

"A mere gratuitous promise of a future gift, lacking consideration, is simply unenforceable as a nudum pactum. [However,] [w]hen the gratuitous promise is coupled with an inducement for others to subscribe, the promise is no longer void on its face." Mount Sinai Hosp. of Greater Miami, Inc. v. Jordan, 290 So. 2d 484, 486 (Fla. 1974). Florida law follows the Restatement (Second) of Contracts, Section 90, regarding the basic elements of promissory estoppel. See Friends of Lubavitch/Landlow Yeshivah v. N. Trust Bank of

Fla., 685 So. 2d 951, 952 (Fla. 3d DCA 1996). As explained in Section 90 of the Restatement, "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." Friends of Lubavitch, 685 So. 2d at 952 (quoting Restatement (Second) of Contracts, Section 90 (1979)).

Cucinotta claims that "[h]er store manager, *within his authority of CVS*, granted her permission [to take a family medical leave of absence] without any further conditions," on three separate occasions: November 5, 2009, November 11, 2009, and November 13, 2009.  (Doc. # 18 at ¶¶ 5-6) (emphasis added).  However, the employee handbook, attached by CVS to the motion to dismiss, provides unambiguous notice to employees that "No one is authorized to provide any employee with an employment contract or special arrangement concerning terms or conditions of employment unless the contract is in writing and signed by the president.  Employment with the Company may be terminated at any time with or without cause or notice by the employee or the Company."  (Doc. # 19-1 at 2). Thus, the employee handbook, incorporated by reference as an attached exhibit to CVS's motion to dismiss, directly

8

contradicts Cucinotta's allegation that the manager had authority to grant a leave of absence.

"Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control." Simmons v. Peavy-Welsh Lumber Co., 113 F.2d 812, 813 (5th Cir. 1940). See also Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1206 (11th Cir. 2007) ("[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern."). Thus, the Court evaluates Cucinotta's presumed promissory estoppel claim in light of this relevant provision in the employee handbook.

Given the awareness of both parties that a CVS manager is not authorized to enter an oral contract "provid[ing] an[ ] employee with an employment contract or special arrangement concerning terms or conditions of employment," any actions induced by the manager's "grant of permission" regarding Cucinotta's requested family medical leave cannot be characterized as actions which the manager should have reasonably expected to induce. The Court thus determines that Cucinotta has failed to establish the required elements of promissory estoppel, and that the alleged contract otherwise lacks sufficient consideration to constitute an enforceable agreement. The Court accordingly grants CVS's motion to

9

dismiss as to Count I.

**B. Count II**

To state a claim for intentional infliction of emotional distress under Florida law, a complaint must allege the following four elements: "(1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct; (3) the conduct caused the emotional distress; and (4) the distress was severe." Liberty Mut. Ins. Co. v. Steadman, 968 So. 2d 592, 594 (Fla. 2d DCA 2007). In determining whether certain conduct might support a claim of intentional infliction of emotional distress, the Court must objectively consider "whether such behavior is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Metro. Life Ins. Co. v. McCarson, 467 So. 2d 277, 278-79 (Fla. 1985). This determination "falls to the judiciary––it is a matter of law, not a question of fact." Ponton v. Scarfone, 468 So. 2d 1009, 1011 (Fla. 2d DCA 1985).

In distinguishing outrageous from non-actionable behavior, Florida courts have found plaintiffs' allegations sufficient to support a claim of intentional infliction of emotional distress in cases where defendants: (1) produced and

10

distributed a publication in which the author threatened "to kill the plaintiff[ ] and to rape the plaintiff's children," Nims v. Harrison, 768 So. 2d 1198, 1201 (Fla. 1st DCA 2000); (2) repeatedly subjected the plaintiff to sexual harassment and verbal abuse coupled with unwelcome physical contact or abuse, Stockett v. Tolin, 791 F. Supp. 1536 (S.D. Fla. 1992); Johnson v. Thigpen, 788 So. 2d 410 (Fla. 1st DCA 2001); (3) misrepresented to a widow that a container held her deceased husband's ashes when in fact the container held the ashes of another deceased person, Smith v. Telophase Nat'l Cremation Soc'y, Inc., 471 So. 2d 163 (Fla. 2d DCA 1985); or (4) misrepresented the cause of death of a deceased patient to cover up an accidental lethal overdose that ultimately led to the patient's death, Thomas v. Hosp. Bd. of Dirs. of Lee Cnty., 41 So. 3d 246 (Fla. 2d DCA 2010).

Florida courts have found outrageousness lacking, however, in cases where the defendant: (1) directed the plaintiff-employee to report to work immediately, despite the defendant's awareness that the plaintiff-employee might be suffering symptoms of her epileptic seizure disorder, resulting in the plaintiff suffering a seizure while driving to work, Hernandez v. Tallahassee Med. Ctr., 896 So. 2d 839 (Fla. 1st DCA 2005); (2) verbally abused the plaintiff in the

11

workplace with humiliating language and racial epithets, Lay v. Roux Labs., Inc., 379 So. 2d 451 (Fla. 1st DCA 1980); or (3) cremated a deceased person's body without the deceased person's daughter's notification or consent, but with the consent of the deceased's companion, Matsumoto v. Am. Burial & Cremation Svcs., Inc., 949 So. 2d 1054 (Fla. 2d DCA 2006).

Under the circumstances of this case, Cucinotta's ability to state a claim for intentional infliction of emotional distress turns on the awareness of the CVS manager regarding the urgent nature of Cucinotta's request. Because Cucinotta states in the amended complaint that she "informed her store manager that her mother's death was imminent," Cucinotta has sufficiently alleged that the CVS manager understood the urgency of Cucinotta's situation when the manager denied the request for immediate leave. (Doc. # 18 at 6). The manager's knowledge that denying Cucinotta's request could potentially result in Cucinotta's inability to be present during her mother's final moments largely influences the "outrageousness" of the manager's decision. See Langer v. George Washington Univ., 498 F. Supp. 2d 196, 200 (D.D.C. 2007) ("[T]he extreme and outrageous nature of conduct underlying an intentional infliction of emotional distress claim may arise from the actor's knowledge that the other is peculiarly susceptible to

12

emotional distress . . . . Conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge, where it would not be so if he did not know.") (internal citations omitted).

Because the Court considers the manager's alleged conduct sufficiently outrageous to state a claim for intentional inflication of emotional distress, the Court denies CVS's motion to dismiss as to Count II.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

Defendants' Motion to Dismiss (Doc. # 19) is **GRANTED** as to Count I and **DENIED** as to Count II.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 9th day of November, 2012.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel of Record

13